LAND, J.
The relator was ousted as a member of the board of commissioners of the port of New Orleans by a judgment rendered in the above-entitled proceeding by the Civil district court for the parish of Orleans.
The relator’s term as a member of said board had expired, and the Governor requested his resignation. On his refusal to resign the Governor removed him from office, and appointed John H. Fulton as his successor. Relator refused to surrender possession of the office, and ouster proceedings were instituted against him, with the result just stated. The relator thereupon applied to this court for a writ of certiorari, which was granted for the purpose of reviewing the legality of the ouster proceedings in the civil district court.
Relator was appointed for a term of five years, as provided by Act 70 of 1896, creating the board of commissioners of the port of New Orleans. His official tenure under said act expired several years ago, but relat- or claims “that his term of office was extended and made a life tenure by the provisions of section 3 of Act 180 of 1908.” As the said section refers to existing laws and to an existing organization, the Act of 1908 should be construed with reference to the Act of 1896 on the same subject-matter.
Section 1 of Act No. 70 of 1896 reads as follows:
“That the Governor of the state of Louisiana is hereby authorized to appoint a board of commissioners to be known as the ‘Board of Commissioners of the Port of New Orleans,’ said board to consist of five members, who shall he citizens of the United States and reside within the port limits of New Orleans in the parishes of Orleans, Jefferson, or St. Bernard, and at the time of their appointment must be prominently identified with the commerce or business interests of the port of New Orleans. One of said commissioners shall be appointed for a term of three years, one for four years, one for five years, one for six years and one for seven years. At the expiration of their term their successors shall be appointed by the Governor for a period of five years each. The board shall have the power to fill the unexpired term should any vacancy occur through death, resignation or other cause.”
*970 Section 8 provides that said hoard shall elect out of their number a president, vice president, and secretary, whose duties shall be those usual to such offices, and that three members shall constitute a quorum.
In 1908 the Legislature passed Act No. 180 of that year, which was submitted and adopted as a constitutional amendment at the next ensuing congressional election. The object of the act, as expressed in the title, was to authorize the board of commissioners of the port of New Orleans to issue $3,500,000, of 5 per cent, bonds, and “to continue said board in existence until the payment of said bonds.”
Section 1 of the act authorized the issue of coupon bonds, dated January 1,1909, bearing 5 per cent, interest, payable semiannually, the principal payable at any time between July 1, 1924, and July 1, 1959. Section 3 reads as follows:
“That the principal and interest of said bonds shall be paid by preference from the revenues of the board of commissioners of the port of New Orleans, and all revenues collectible under the laws, as now existing, shall be and ar.e hereby pledged to secure said bonds and interest. In no event shall the charges imposed by said board, under the law now existing, be reduced to an amount less than necessary for the payment of the principal and interest of said bonds; and the board of commissioners, * * * as presently organized and without diminution of existing territorial jurisdiction, shall continue in legal existence until all the bonds issued in accordance with'this act shall have been paid in principal and interest; provided that the members of said board shall be appointed by the Governor, subject to removal by the Governor, and the Governor shall have power to fill all vacancies.”
This proviso was an amendment to the original bill, and is said to have been written by the then Governor.
In 1908 five members of the board were serving under appointments for five years each. There is nothing in the title or body of the act which speaks the legislative intent to extend the tenure of office of the members of the board. Relator deduces such intent from the phrase “as presently organized,” used in section 3 of the act. This phrase applies to the board of commissioners; and the contention of the relator is reduced to the proposition that the extension of the corporate existence of the board carried with it á like extension of the official tenure of the then members of the board. This is a non sequitur, as the existence of the board does not depend on the continued tenure of its members at a particular date.
Act 70 of 1896 restricted the terms of members to five years, and authorized the Govern- or to make the appointments, except in case of vacancies for unexpired terms. This exception was repealed by the proviso of section 3 of Act 180 of 1908, which vested in the Governor plenary power of appointment and the power to fill all vacancies. The proviso thus makes a distinction between original vacancies and vacancies for unexpired terms, as did section 1 of Act 70 of 1896. Under the construction of relator there could be no original appointments, as the terms extend to the year 1959. Tenure of office for life or for 50 years is unknown to the Constitution and laws of this state, and is contrary to the theory and practice of popular government. We are not prepared to concede that section 3, as originally drafted, conferred on the then members of board a life tenure, or extended their terms to the year 1959, or until all the bonds were paid in full. Section 3 was enacted for the express purpose of extending the existence of the board until all the bonds were paid. The board is the subject of the sentence, and the predicate is the phrase "shall continue in legal existence,” etc. The predicate has nb application to individuals, and its extension to the then members of the board is not supported by the letter of the text, and is certainly contrary to the reason and ■ spirit of the law. The inclusion of the individual members of the board in the phrase “as pres *972 ently organized.” leads to extraordinary results, which the lawmaker and the voters could not have reasonably contemplated, such as a life tenure of office in favor of the members of the board who happened to be in office in the year 1908; while at the same time the tenure of their successors was limited to five years, subject to removal by the Governor.
We have been cited to no case where officers performing the same duties and functions have been divided into two classes, one holding for life or 50 years, and the other for five years, subject to removal at the will of the Governor.
The proviso of section 3 of Act 180 of 1908 is a re-enactment and amendment of section 1 of Act 70 of 1896, and does not warrant any discrimination as to tenure between present and future members of the board of commissioners.
The controlling object or purpose of Act No. ISO of 1908 was to authorize the board of commissioners to issue $3,500,000 of 5 per cent, bonds, and to provide for their payment in principal and interest. To that end the lawmaker deemed it advisable to continue in existence until the payment of the bonds the board of commissioners created and organized under Act 70 of 1896. Section 8 of said act provides for the organization of said board by the election of a. president, vice president, and secretary.
Section 3 of Act No. 180 of 1908 refers to the board of commissioners “as presently organized” — that is to say, under section 8 of Act 70 of 1896 — and continues its “legal existence until all the bonds that might be issued under the former act shall have been paid.” What is thus continued is “the legal existence” of the board, and not of its organization. The continuance of the organization would have included not only the members, but the officers, for a period of 50 years or more. It is beyond legislative power to prolong the existence of natural persons for a half century. To avoid this objection the relator construes the phrase “until all the bonds :i! * * shall have been paid” as meaning until the death of the members. We do not find it possible to adopt relator’s construction of said section, leading, as it does, to results so extraordinary and unreasonable that they could not have been contemplated either by the Legislature or the voters. Our construction, which harmonizes the text and all the provisions of the section, is that the lawmaker intended only to continue the “legal existence” of the board as a corporate body. The distinction between a corporation and its members and officials is too well recognized to have escaped the attention of the Legislature.
While we have great respect for the opinion of our former Governor, we think he erred in adopting the construction now advocated by the relator.
It is therefore ordered that the writ of certiorari herein issued be recalled, and that the application of relator be dismissed, with costs.
See dissenting 'opinion of MONROE, X, 61 South. 996.